# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**

**COURTNEY D. CLAYTON**                    **NO. 21-00091-BAJ-EWD**

## RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 31)** filed by Defendant Courtney Clayton. Defendant seeks to suppress the evidence obtained from the search of the black Mercedes Benz CLS500 and any statements he allegedly made by him to law enforcement officers after his arrest. The Government filed an opposition. (Doc. 35). On May 11, 2022, the Court held an evidentiary hearing. For the reasons stated herein, the motion is **DENIED**.

## I.    BACKGROUND

In November 2020, East Baton Rouge Sheriff's Office narcotics agents began an investigation into potential narcotics trafficking by Defendant and others. Agents determined that Defendant was residing at 212 Croydon Avenue, Baton Rouge, LA and was on home confinement by the Bureau of Prisons following a previous federal drug conviction. Also residing at the Croydon Avenue residence was Defendant's mother, Felicia Clayton. A pole camera was installed to conduct surveillance at which point agents confirmed that Defendant resided at the home and appeared to be involved in suspected hand-to-hand narcotics activity.

Two vehicles were observed at the residence, a silver Land Rover and a black

Mercedes Benz CLS500. A search of the Land Rover license plate revealed that the vehicle travelled to Texas one day of every month for four months and returned to Baton Rouge the same day. Agents obtained a state warrant for a GPS tracker, which was placed on the Land Rover.[1]

On January 8, 2021, officers secured an Order of Search for the Croydon Avenue home. On January 11, 2021, while preparing to execute the search warrant, officers observed Defendant's home being burglarized. Officers ultimately decided not to execute this warrant and took no enforcement actions to disrupt the burglary or to arrest the burglars.

On January 13, 2021, EBRSO Officer Joshua Clark secured renewed Orders of Search for Defendant's home, but officers apparently decided not to execute it.[2]

On January 25, 2021, officers obtained a third search warrant for Defendant's residence. On January 26, 2021, officers executed the search warrant. The warrant authorized the search of the residence and the vehicles on the premises. Prior to the execution of the warrant, Defendant was observed leaving the residence in the black Mercedes. A traffic stop was conducted approximately 250 yards from the residence, where officers arrested Defendant. EBRSO officers then drove the vehicle back to the

---

[1] According to the Affidavit supporting the search warrant application, on December 15, 2020, the Land Rover was tracked travelling to Dallas, TX, where Defendant's mother, Felicia Clayton, was observed travelling to six to eight pharmacies to pick up prescription medication. A DEA agent interviewed a pharmacist at one of the locations and was informed that Defendant's mother had been collecting 90 Oxycodone pills by prescription for over a year on behalf of another person.

[2] At the hearing on Defendant's motion, the Government offered no reasons for the failure to execute the warrant.

residence and conducted the search.

During the search, agents located the following: 1,172.48 grams of heroin, 103.4 grams of fentanyl, 676.5 dosage units of fentanyl, 16 grams of cocaine, $12,760 in U.S. currency, and three cell phones belonging to Defendant. Defendant was then read his Miranda Warning by Officer Clark, at which point he stated that all narcotics and U.S. currency found inside the black Mercedes belonged to him.

## II.  DISCUSSION

Defendant raises four issues: (1) whether the warrant was supported by probable cause; (2) whether the warrant authorized officers to search the black Mercedes; (3) whether officers were entitled to initiate the search outside of Defendant's residence; and (4) whether officers provided Defendant with his Miranda Warnings prior to his alleged incriminating statements. The Court will address each issue in turn.

### a.  The Warrant was Supported by Probable Cause

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The task of the issuing judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before her, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing

court is simply to ensure that the judge had a "substantial basis for ... conclud[ing]" that probable cause existed. *Id.* at 238-239.

"A court generally will not second guess the [issuing judge's] determination regarding the existence of probable cause in granting a search warrant." *United States v. Trejo*, 492 F. Supp. 2d 659, 674 (W.D. Tex. 2007), aff'd, 378 F. App'x 441 (5th Cir. 2010). "Instead, [an issuing] judge's determination on probable cause is given great deference by the reviewing court." *Id.* (internal quotations and citations omitted). To determine if an affidavit provides probable cause, it must merely raise "a 'fair probability' or a 'substantial chance' that criminal evidence will be found in the place to be searched." *United States v. Morton*, 984 F.3d 421, 425 (5th Cir. 2021) (Morton I) (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009)).

Here, Defendant had "the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

When applying for the warrant, the Government submitted a sixteen-page Affidavit describing the probable cause that supported the warrant. (Doc. 35-2). The Affidavit contains the Declaration of Officer Clark, which describes the following: (1) information provided by a confidential informant; (2) a description of Defendant's residence; (3) observations of suspected narcotics trafficking activities by the Defendant outside of the residence; (4) Defendant's mother's movements in the Silver

4

Land Rover; and (5) other activities consistent with narcotics distribution before the January 11th incident. Importantly, the Affidavit also describes recorded surveillance of an individual known to EBRSO officers to have engaged in past narcotics trafficking activities who was seen delivering suspected narcotics to Defendant's residence before and after the January 11th incident.

Thus, the Court must conclude that Defendant did not prove by a preponderance of the evidence that the warrant was issued absent the requisite probable cause.

### b. Officers were Entitled to Search Black Mercedes

Defendant argues that based on the warrant for his residence, EBRSO officers were not entitled to conduct a search of the black Mercedes. (Doc. 31-8, p. 11). However, the warrant in question expressly authorized officers to search "all individuals as well as vehicles present upon and during the execution of this warrant." (Doc. 35-1, p. 1). Accordingly, by the plain language of the warrant, officers were entitled to search the Mercedes.

### c. Officers were Entitled to Initiate Search within "Immediate Vicinity" of Defendant's Home

Defendant also argues that officers were not entitled to search the Mercedes because the search did not begin at his home. The Court finds, however, that officers were entitled to search the car pursuant to the warrant because Defendant was stopped within the immediate vicinity of his residence.

In *Bailey v. United States*, 568 U.S. 186, 202, 133 S. Ct. 1031, 1043, 185 L. Ed. 2d 19 (2013), officers were sitting outside an apartment preparing to execute a search

5

warrant when two men matching the description of the suspect left the apartment, got into a car, and drove away. *Id.* at 1036. The police followed the car for roughly one mile before stopping it. *Id.* The men were ordered out of the car, patted down, and briefly questioned before being handcuffed. *Id.* Officers then drove the two men back to the apartment in a patrol car, while another officer drove the seized car. *Id.* By the time they returned, the search team had already discovered a firearm and illegal narcotics in plain view inside the apartment. *Id.* Both men were then placed under arrest. *Id.* In its review of the facts of the case, the United States Supreme Court instructed that once the individual has left the "immediate vicinity" of a premises to be search, detention must be justified by some other rationale. *Id.* at 1043.

In a case similar to the case *sub judice*, a court determined that a traffic stop of a defendant made pursuant to a warrant to search a residence was proper when the stop occurred within the immediate vicinity and "less than a tenth of a mile from [the defendant's] residence." *United States v. Ruiz*, No. EP-14-CR-868-PRM, 2014 WL 10183873, at *8 (W.D. Tex. Aug. 25, 2014). In so holding, the Court relied on testimony that the defendant was within the line of sight of his dwelling. *Id.*

Here, Defendant was stopped within 250 yards of his residence, well within the "immediate vicinity" of the area to be searched. *Bailey*, 133 S. Ct. at 1043. (Tr. P. 41). According to Officer Clark, the "intent was to stop [Defendant] at the first block." *Id.* In fact, testimony at the hearing and dash camera video showed that the stop would have occurred sooner, but that another motorist blocked the officers' path as they attempted to stop Defendant. (Tr. P. 101-102). Moreover, Officer Clark

testified that it is common practice for EBRSO officers to stop suspects "while they leave the residence" to ensure public safety and officer safety when conducting a search. (Tr. P. 77).

Thus, under the circumstances presented here, the Court must conclude that Defendant was stopped within the immediate vicinity of the residence that officers were entitled to search pursuant to the warrant.

### d. Defendant Received Miranda Warnings

Defendant argues that he was never advised of his Miranda Warnings. Defendant's argument, however, is unpersuasive. "Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of h[is] constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

The Government provided credible and uncontroverted evidence, in the form of Officer Clark's report and testimony, that Defendant was advised of his Miranda Warnings after being driven back to the residence. (Doc. 35-3; Tr. P. 18). Moreover, Defendant failed to produce any evidence challenging Officer Clark's credibility or the accuracy of the information reflected in his report.[3] Further, Officer Clark's report supports his testimony that he provided Defendant with his Miranda Warnings. Accordingly, the Court concludes that Defendant was properly advised of his Miranda

---

[3] According to the report, Defendant and his mother were advised of "their rights per Miranda, which both stated they understood" after the traffic stop was conducted but prior to any search of the residence or the Mercedes. (Doc. 35-3, p. 29).

Warnings.

### III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Suppress (Doc. 31) is DENIED**.

Baton Rouge, Louisiana, this 30th day of June, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**